THOMAS & BARTON CO. et al. v. THOMAS et al.

(Circuit Court of Appeals, Fifth Circuit. November 10, 1908.)

No. 1,788.

1. CORPORATIONS (§ 47*)—CORPORATE NAME—POWER TO CHANGE.

The change of name of a private corporation is not material, and does not require the unanimous consent of the stockholders, but in the absence of fraud is merely a matter of business management.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 134, 135; Dec. Dig. § 47.*]

2. CORPORATIONS (§ 190*)—RIGHTS OF STOCKHOLDERS—ACTION BY MINORITY STOCKHOLDER AGAINST CORPORATION.

A bill by a minority stockholder in a trading corporation, not shown to be insolvent, complaining of the management of the majority, in which no ultra vires nor prima facie fraudulent act is specifically al-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

leged, but which contains merely general suggestions and allegations of fraud and conspiracy, and the gravamen of which is that the corporation has changed its name, as was authorized by law, and that a relative who specially represented complainant's interests has been removed as manager and a director, does not state facts authorizing a court of equity to require the corporation to purchase complainant's stock.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 190.*]

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

The bill in this case alleges as follows:

(1) That about the year 1880 the firm of Thomas & Barton, consisting of A. A. Thomas, the brother of your oratrix, and the defendant, J. E. Barton, was organized in the city of Augusta, for the purpose of engaging in the business of wholesale and retail dealers in pianos, organs, musical instruments, sewing machines, and all other articles usually dealt in by a business of that character.

(2) That from the time the said firm of Thomas & Barton was organized up to about the 17th day of January, 1899, the aforesaid business was carried on in the city of Augusta, county of Richmond, under the name of Thomas & Barton, and by a system of judicious advertising, at large expenditure, and by honest and fair dealing with the public, the said firm built up an enviable reputation under said name in the states of South Carolina and Georgia.

(3) That just prior to the 17th day of January, 1890, a corporation was organized for the purpose of taking over the assets and good will of said business of Thomas & Barton, and a charter was granted on the 17th day of January, A. D. 1899, by the superior court of Richmond county, Ga., to the Thomas & Barton Company, with an authorized capital stock of $35,000.

(4) That your oratrix having implicit confidence in the business ability, integrity and sagacity of her brother A. A. Thomas, who, up to that time, had been the senior member of the firm of Thomas & Barton, aforesaid, and believing that the capital stock of the said corporation, under the management of the said A. A. Thomas, would be a good business investment, subscribed for and paid for $13,000.00 of the capital stock of the aforesaid corporation.

(5) That at the time the said Thomas & Barton Company began business there was about $29,000 of its capital stock subscribed and paid for by the following stockholders, to wit: Your oratrix $13,000.00 or 260 shares of the capital stock; Mrs. E. C. Barton, $13,000, or 260 shares of the capital stock; Weber Piano Company, $3,000 or 60 shares of the capital stock.

(6) That upon the organization of said corporation as aforesaid, the brother of your oratrix, A. A. Thomas, who had been the senior member of the firm of Thomas & Barton, as aforesaid, was elected president and business manager of said corporation, and the business of said corporation was conducted in a profitable and successful manner to the 29th day of June, 1905, at which time the business showed a large surplus of accumulated profits, aggregating nearly $50,000.

(7) That the business carried on by the aforesaid corporation consisted largely in selling pianos, organs and musical instruments on long time, or what is known as the instalment plan, and frequently required a large amount of capital; that on said 29th day of June, 1905, the said corporation desiring to borrow the sum of $10,000.00 for the purpose of increasing its working capital, did have a resolution introduced and passed wherein it was agreed to increase the capital stock of said corporation from $35,000 to $45,000, making the $10,000 increase preferred stock at a par value of $50 per share with the guaranteed dividend of six per cent.

(8) That it was further stipulated that said preferred stock should be redeemed at any time after the expiration of one year by the payment of the preferred stock with the accumulated six per cent. interest.

(9) That said $10,000 in preferred stock was subscribed for by said Hugh A.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Alexander, T. R. Maxwell, and the National Exchange Bank, in the following proportions, to wit: $2,500, or 50 shares, to Hugh H. Alexander; $5,000, or 100 shares, to T. R. Maxwell; and $2,500, or 50 shares, to the National Exchange Bank.

(10) That before the said Hugh H. Alexander, T. R. Maxwell, and the National Exchange Bank would advance the aforesaid sum of $10,000 for said preferred stock, they required that an additional $10,000 of the common stock of said corporation be donated to them as a bonus for said loan, and without any other consideration whatever, and, as this bonus was exacted as a condition precedent to the making of said loan by said Hugh H. Alexander, T. R. Maxwell, and the National Exchange Bank, the said $10,000 of common stock was donated to the said Hugh H. Alexander, T. R. Maxwell, and the National Exchange Bank, in the following proportions, to wit: Your oratrix, $4,500, or 90 shares of the capital stock; Mrs. E. C. Barton, $4,500, or 90 shares of the capital stock; and the Weber Piano Company, $1,000, or 20 shares of said capital stock.

(11) That under said resolution said preferred stock was given equal voting power with the common stock, and after the preferred was issued as aforesaid, and the common stock was donated as aforesaid, the capital stock of said corporation of Thomas & Barton Company stood as follows: Your oratrix, $8,500, or 170 shares; Mrs. E. C. Barton, $8,500, or 170 shares; Weber Piano Company, $2,000, or 40 shares: Hugh H. Alexander, $2,500, or 50 shares of the common stock, and $2,500 or 50 shares of the preferred stock; T. R. Maxwell, $5,000 or 100 shares of the common stock, and $5,000 or 100 shares of the preferred stock; the said National Exchange Bank, $2,500 or 50 shares of the common stock, and $2,500 or 50 shares of the preferred stock; and a small amount of stock, the exact amount of which is not known to your oratrix, was held by A. A. Thomas, J. E. Barton, and W. H. Barrett.

(12) That less than 60 days after the acquisition of said $10,000 of common stock, by the donation as aforesaid, and $10,000 of preferred stock, the said Hugh H. Alexander, T. R. Maxwell, and said National Exchange Bank combined, conspired, and confederated and agreed together to assume the control and management of the business of said corporation, and, as your oratrix is informed and believes, by threats and intimidations, compelled the said J. E. Barton, the husband of Mrs. E. C. Barton, having control of her stock, and holding her proxies, to join in said combination and conspiracy as aforesaid, and a short time thereafter deposed the said A. A. Thomas from the office of president of said corporation, and reduced him to a common salesman; that a short time thereafter they demanded his resignation even as a common salesman, and entirely excluded him, although he held a power of attorney to vote and manage the stock of your oratrix, from any active participation in the conduct and management of said business.

(13) That said A. A. Thomas went to the said J. E. Barton, who had been his business partner for more than 25 years, and protested against his joining with the said Hugh H. Alexander, T. R. Maxwell, and the National Exchange Bank, in their desire to oust him from any participation in said business, and proposed to him that they join together and raise the $10,000 advanced upon the preferred capital stock and pay the same, and thereby resume the management of their own business; that the said A. A. Thomas was informed by the said J. E. Barton that he was afraid, because the cashier of said National Exchange Bank, which said National Exchange Bank was a creditor of said corporation of Thomas & Barton Company, had threatened to place said corporation in bankruptcy in the event the said Thomas should have any voice in the management or control of the said business.

(14) That at a meeting of the stockholders of said Thomas & Barton Company held on the 11th day of February, 1907, by a vote of the $10,000 of preferred stock, and the $10,000 common stock, donated as aforesaid, held by the said Hugh H. Alexander, Lula C. Maxwell, executrix of the estate of T. R. Maxwell, and the said National Exchange Bank, and the stock held by said J. E. Barton and Mrs. E. C. Barton, a new board of directors was elected and the said A. A. Thomas deposed as a director, and thereby your oratrix was deprived of any further participation in the management and control of said corporation.

(15) That on the 4th day of March, 1907, the stockholders of said corporation, at a meeting called for that purpose, introduced a resolution that an application to the superior court of Richmond county be made for the purpose of changing the name of the Thomas & Barton Company—which was the name of said corporation from the date of its organization, and which name was purchased from the said Thomas & Barton, and which had been used by the said Thomas & Barton for a quarter of a century—to the Barton Piano & Furniture Company.

(16) That, when said resolution was proposed at said meeting, your oratrix, through her representative, protested against this sacrifice of the corporate assets, contending that the good will and name of Thomas & Barton was too valuable an asset to be destroyed by the contemplated act of the incorporators, and notified the said stockholders that the courts would be appealed to to restrain the wrong that they were about to accomplish, the same being destructive of the value of your oratrix's property.

(17) That, notwithstanding the earnest protest made by your oratrix, the stockholders of said corporation adopted the resolution to change the name of said company as aforesaid by the vote of the donated stock as hereinabove set forth.

(18) That your oratrix then contemplated and now contends that the amendment to the charter as contemplated by said resolution is a fundamental, radical, and vital amendment; that said amendment could not be adopted by a part of the stockholders of said corporation, but requires the unanimous consent of all the stockholders; that there has been expended in advertising the name under which said corporation was then conducting its business over $100,000, and to nullify the effect of such expenditure was to act willfully oblivious of the best interest of said company, and to the great detriment of your oratrix.

(19) That your oratrix, in depositing her common stock with the holders of the preferred stock, as hereinabove set forth, only intended to deposit it as collateral for a debt; that this understanding is corroborated by the resolution which was adopted at the time said loan was made, wherein it was provided that said stock was to be redeemable after the expiration of one year.

(20) Your oratrix further shows that by the financial statement issued by the Thomas & Barton Company on January 1, 1907, it appears that the total assets of said corporation are of the value of $121,255.54; that the total outstanding indebtedness of said corporation, exclusive of the $10,000 preferred stock above referred to, is $38,642.70; and that counting the outstanding stock as liability, both common and preferred, there is a clear surplus of the assets of said corporation amounting to $41,811.84, and that, therefore, the $13,000 invested by your oratrix in the corporation aforesaid should be of the value of at least $26,000; that, notwithstanding this fact, the said Hugh H. Alexander, T. R. Maxwell, and the National Exchange Bank, by combining and agreeing with the said J. E. Barton, who controls the stock of Mrs. E. C. Barton, to vote their stocks together to the detriment and injury of your oratrix, have, by the investment of $10,000, which was merely intended as a loan to said corporation, assumed the entire control and management of said corporation, and have excluded your oratrix from any participation therein, and have deprived her of all representation in the management and control of said corporation, and by attempting to change the name of said corporation— which is one of its principal assets—threaten to completely destroy the business of said corporation and the property of your oratrix.

(21) And your oratrix further shows that said corporation has been under the management and control of the said A. A. Thomas as president and general manager from its inception to July, 1905, and that during that period, in addition to the expenses of the corporation, and the salaries of the officials, and the payment of all liabilities of the corporation, it has accumulated a surplus profit of over $41,000.

(22) Your oratrix further charges, for the reasons hereinabove set forth, that the deposition of said A. A. Thomas, as president and manager of said business, was not only unwise as a business proposition, but was prejudicial to the best interest of the corporation, and that the contemplated change of the name under which said corporation has been able to accumulate the sur-

plus as above set out, in a comparatively short period, could only be inspired by a desire to injure your oratrix in the possession of her stock as aforesaid.

(23) That the arbitrary exercise of the voting power of the donated stock, as aforesaid, that was given to the said Alexander, Maxwell, and the National Exchange Bank, has been used to the great detriment of your oratrix, and to depose the said A. A. Thomas, upon whom your oratrix relied to look after her interest in the conduct and management of said business; that without said illegally issued stock the said A. A. Thomas would not have been deposed, nor the great wrong done to the value of your oratrix's stock.

Complainants prayed for an injunction restraining the defendants from attempting to change and changing the name of the corporation, restraining Alexander and others from voting the $10,000 of the preferred stock, and adjudging that said parties have no right to the $10,000 of donated stock, and for an injunction and receiver.

The bill was demurred to on several grounds, mainly for want of equity.

On hearing, the Circuit Court permitted an amendment suggesting generally a dissipation of assets, and then denied all relief except an injunction restraining the defendants from attempting to change the name of the corporation and from dissipating the assets, and ordering a reference to hear evidence and determine and report the actual value per share of the common stock of the corporation owned by Florence M. Thomas and A. A. Thomas, in order that suitable decree may be entered requiring the said Thomas & Barton Company to pay the said Florence M. Thomas and A. A. Thomas the true and actual value of the common stock owned by them in said company.

J. R. Lamar and E. H. Callaway, for appellants.

Alexander Akerman, Charles Akerman, and C. Henry Cohen, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). An inspection of the bill shows a minority stockholder of a trading corporation complaining of the management of the majority, in which no ultra vires nor prima facie fraudulent act is sufficiently and specifically alleged, the pleader dealing only in general suggestions and allegations of fraud and conspiracy. All the facts alleged relate to the ordinary business and management of the corporation, and the real gravamen of the bill appears to be that complainant's brother, A. A. Thomas, who was a leading partner in the old business of Thomas & Barton and one time manager of the corporation, is not by the present management permitted to be an active official, president, director, or clerk, and in such capacity to represent complainant's interests and to oversee and help carry on the business. The amendment permitted on the hearing in the Circuit Court is too general in its averments to in any wise enlarge the scope of the bill.

The law of Georgia permits amendments to charters of corporations by proper proceedings before the Superior Court. Civ. Code Ga. 1895, § 2350 (6); Acts 1897, p. 28. The change of the name of a private corporation is not material (1 Thomp. Corp. § 82; 10 Cyc. 211, and cases cited); and, whether the name be valuable or merely designative and ornamental, the change thereof under and pursuant to law does not require the unanimous consent of the stockholders; and, in the absence of fraud, it is a matter of business management. All the authorities brought to our attention by counsel or found on our own search are in harmony with this conclusion.

165 F.—3

There are neither averments in the bill nor evidence in the record warranting an injunction restraining the dissipation of assets. In our opinion, there is no showing by averment, evidence, or argument warranting the retention of the bill for the purpose of ascertaining the actual value of complainant's stock with a view to compel the corporation or the majority stockholders to buy or pay for the same. To carry out such purpose would be either to force a liquidation of the corporation (not alleged or shown to be insolvent), or the majority stockholders to buy or sell to protect their interests.

For these reasons the decree of the Circuit Court granting an injunction pendente lite is reversed, and the cause is remanded with instructions to dismiss the complainant's bill for want of equity.